HENRY K. NORTON, TRUSTEE OF THE PROPERTY OF NEW YORK, SUSQUEHANNA AND WESTERN RAILROAD COMPANY, PROSECUTOR-RESPONDENT, v. THE STATE BOARD OF TAX APPEALS AND THE STATE TAX COMMISSIONER OF THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS.

Argued October 18, 1945—Decided January 31, 1946.

For the prosecutor-respondent, *Ralph E. Lum* (*Chester W. Fairlee,* of counsel).

For the defendants-appellants, *Walter D. Van Riper,* Attorney-General (*Benjamin C. Van Tine,* Deputy Attorney-General, of counsel).

For the intervenors, Delaware, Lackawanna and Western Railroad Company and Lehigh Valley Railroad Company, *Maximilian M. Stallman* and *Edward A. Markley.*

The opinion of the court was delivered by

OLIPHANT, J. This is an appeal from a rule entered by the Supreme Court on *certiorari,* setting aside a judgment of the State Board of Tax Appeals which confirmed the franchise excise tax assessment made by the State Tax Commissioner against property of the respondent for the year 1943.

A rule was entered in the Supreme Court permitting the Delaware, Lackawanna and Western Railroad Company and the Lehigh Valley Railroad Company to intervene as *amici curiæ,* to participate in the argument and to file briefs.

The tax levied on railroad property had been for years continuously in litigation and large amounts of these taxes were in default. In 1941 a new method of taxing such property was enacted, *Pamph. L.* 1941, *ch.* 291. This act was amended the following year by *Pamph. L.* 1942, *ch.* 169 (*R. S.* 54:29A–1, *et seq.*). These laws in substance, provide a combination property tax and franchise excise tax computed in a given year on the basis of the net operating income of a railroad system for the preceding calendar year. As to the year 1941 the laws were held unconstitutional by the Supreme

Court in *Jersey City* v. *Board of Tax Appeals et al.*, 133 N. J. L. 202, but constitutional as regards assessments made for 1942 and thereafter.

The new system was devised to provide some measure of tax relief for the railroads in poor earning years while providing for a greater return to the state in times of high earnings. That the new method does result in substantial reductions under certain conditions is brought out strikingly in *Jersey City* v. *State Board, supra*. With the result in that case, which is presently on appeal, we are not immediately concerned.

By the law under consideration a rate of three per centum is levied on all property used for railroad purposes and an annual excise tax is also levied for the railroads' privilege of exercising their respective franchise.

The pertinent part of the statute under which the assessment of the franchise tax in question was made, *Pamph. L.* 1942, *ch.* 169, § 14, provides:

"For the purpose of this section, net railway operating income shall be computed as total railway operating revenues from all sources, including any revenue whatever derived directly or indirectly from property which is used for railroad purposes, less costs of railroad maintenance, operation and *depreciation, railway tax accruals,* uncollectible railway revenues, rentals (both debits and credits) for equipment leased for less than one year or interchanged, and joint facility rents (both debits and credits), and the amount remaining shall constitute the net railway operating income hereinafter mentioned. *Deductions from operating revenues for depreciation,* additions and betterments, and compensation for personal services *shall be subject to regulation by the commissioner, as to reasonableness of amount and appropriateness of accounting distribution. Depreciation charges shall in no instance, however, exceed the amount claimed by the railroad for depreciation in its report or reports to the Interstate Commerce Commission and fixed, or if none was claimed then as fixed, by the Interstate Commerce Commission in determining the net railway operating income of the railroad for the year under consideration.*"   (Italics added.)

The omitted remainder of the section has no bearing on this controversy.

The State Tax Commissioner found the net operating income of respondent for the year ending October 31st, 1942, to be $916,411, which was the amount reported by it to the Interstate Commerce Commission and accepted as such by it. Before the Tax Commissioner the railroad claimed the right to deduct $75,366.92 for depreciation and $198,679 for tax accruals and sought to have fixed as its net operating income the sum of $642,363.67. This claim was denied and an appeal to the State Board of Tax Appeals was dismissed. On *certiorari* the Supreme Court reversed the judgment of the State Board of Tax Appeals and held that both the item for depreciation and that with respect to tax accruals should have been allowed. As to the former it held that the railroad in its report to the Interstate Commerce Commission did not claim any deduction for depreciation on ways and structures so none was or could be fixed within the meaning of the statute, and that not being fixed there was no standard limiting the amount claimed by the prosecutor in its return to the state. As to the latter it held that the date when the tax liability became known rather than when the assessments were made governs in ascertaining the amount of net operating income on which to assess the tax; that within the meaning of the statute railroad tax accruals are defined as when the validity of the assessments in dispute are finally determined rather than the year when levied. In this holding both as to depreciation and tax accrual items there was error.

As hereinbefore set forth section 14 of chapter 291, laws of 1941 was amended by chapter 169, laws of 1942. The language as used in the amendment section 14, chapter 169, laws of 1942 was added to paragraph 2 of section 14, of the 1941 act, and retained the recital of items entering into net railway operating income. The plain and cogent reason for this language was to set a ceiling on depreciation items. That ceiling is the amount of the item claimed in a railroad's "net railway operating income" report to the Interstate Commerce Commission, or if none is so claimed then as fixed by that Commission. If such items appear in the report, or none

appearing are fixed by it, then the Tax Commissioner is under a positive duty to determine their reasonableness and the appropriateness of the accounting distribution. This last duty together with the ceiling on deductions established by the amendment provides a standard for safeguarding the revenues of the state.

It is admitted that respondent did not include this $75,366.92 for depreciation in its 1942 report to the Interstate Commerce Commission, although some items of depreciation were claimed therein. It is also true that if the charges had been included in the Interstate Commerce Commission report and allowed by it they would have been allowed by the Tax Commissioner, but, not having been claimed he rightly did not do so.

We are of the opinion that the statute, in a determination of net operating income of a railroad for a given year, limits any deduction for "depreciation" to such as is claimed in its report to the Interstate Commerce Commission and, if none is claimed, to such as fixed by that Commission. If none is claimed or fixed none can be allowed by the Tax Commissioner, and if any items of "depreciation" are claimed or fixed the Commissioner is enjoined to determine their reasonableness and appropriateness as to accounting distribution which, in any event, cannot be above the amount claimed or fixed.

In regard to "tax accruals" the question is academic as far as this appellee is concerned. Whether taxes accrue when assessed and levied or when the liability therefor becomes fixed and known is immaterial as far as it is concerned on the facts of the case. The item of $198,679, which it sought to deduct, represented taxes in default for the years 1933 to 1936, inclusive. On April 28th, 1941, the litigation concerning these was finally terminated, with the result that even if the theory advanced by respondent and adopted by the Supreme Court be followed these taxes accrued in 1941, not in the year 1942, for which year the deduction was claimed.

Even so, in view of the importance of the question presented we deem it advisable and necessary to determine it on its merits. Respondent says that a tax accrues when its amount is definitely ascertained and acknowledged to be due

and both respondent and the intervenors contend that a railway tax accrual account which conforms to the Interstate Commerce Commission rules and regulations, and has been accepted and approved by it, is an allowable deduction under our statute in arriving at net railway operating income.

We hold that "tax accruals" means the current taxes for the particular year which have been assessed in conformity with law, *e. g.,* the amount certified by the tax assessor.

The state is not concerned with the bookkeeping practices of the railroad companies. The statute says that in computing the next preceding year's net railway operating revenue there shall be deducted from the total operating revenue from all sources "railway tax accruals," among other items. What is meant thereby is that the deductions of "tax accruals" shall be the amount of the taxes for the year in which "the net operating railway income" is computed.

It is to be noted that as to "tax accruals" no reference is made in the statute to the Interstate Commerce Commission while there is as to "depreciation." Whether or not taxes fixed, contingent or paid were reported to the Interstate Commerce Commission is immaterial. It matters not when or where the tax accrual items are reflected on the books of the railroad companies, what the Interstate Commerce Commission does with the items or what its rules provide with respect to railroad bookkeeping.

The intention of the legislature as expressed in a statute should be ascertained and given effect. *In re Merrill,* 88 *N. J. Eq.* 261; *Clarkson* v. *Ley,* 106 *N. J. L.* 380.

To determine the legislative intention as to the statute under consideration we must look to the dates, July 22d, 1941, and May 8th, 1942, when the original act and the amendment were approved. During all of the period from 1932 to 1940 that railroad taxes were being contested and litigated certain companies accrued all of their current taxes in the years they were levied, while others accrued only the uncontested portions thereof. There was no uniformity. The only thing that is certain is that any company was permitted, as a matter of course, to accrue the whole of the tax in the year in which it was levied, notwithstanding the dispute.

Any rule which would now allow a company to accrue a portion of back taxes would not work for uniformity.

Within this case itself we find the principal vice in any such rule. The Interstate Commerce Commission permitted the intervenors to treat their back taxes as current tax accruals because the inclusion of the item in its reports did not distort the operating account for the reason their earnings were high while on the other hand respondent was given no such permission. Its earnings were low. If, by the mere inclusion of the item in the Interstate Commerce Commission report, under its rules, it becomes a railway tax accrual in contemplation of our statute, then by such action the Interstate Commerce Commission would be permitted to penalize the very one the act was intended to aid, and the one from whom the state expected a large return in a good earning year would escape substantial payments.

Taxes are incurred when assessed and levied. *Jersey City* v. *State Board, supra.* It is inconceivable that it was the legislative intention to permit a railroad to defer the payment of taxes, on any pretext, flimsy or not, in years of low operating revenue so that those taxes might be used to bring about lower net incomes in years of large operating profits. The intention of the legislature, in our opinion, was that "railway tax accruals" as used in the statute was to mean taxes assessed and levied during the next preceding year, and that it was not its intention to allow railroad companies to juggle figures to determine their tax liability for a given year, or to allow them to contest the taxes simply for the purpose of postponing their inclusion for deduction from operating revenue. A fixed formula was being sought.

When the legislature used the words "railway tax accruals" it meant something more than mere Interstate Commerce Commission permission to include an item in a bookkeeping account or a report. It meant something specific. It meant the type of item that on the date of the passage of the act went into such account as a matter of course. It meant current taxes. *In re Reduced Rates,* 68 *Interstate Commerce Commission* 676, we find (at *p.* 683):

"Under our system of accounts all charges to the account

64

'railway tax accruals' are deducted from railway operating revenues before arriving at railway operating income, and all State and Federal taxes, income or other, relating to carriers' railway property, operations, and privileges, are charged to that account. This method of accounting was recently sanctioned by the Supreme Court of the United States in *Galveston Electric Co.* v. *City of Galveston, 258 U. S. 388.*"

It is plain the court there was speaking of current taxes.

Net operating revenue, to the minds of the members of the legislature and to the mind of the layman, without doubt includes a charge for taxes for the year in question, not taxes for years in the past. If the latter were allowed to be included no true net for a given year would be reflected. In *Commissioner* v. *Security Flour Mills, 135 Fed. Rep.* (*2d*) 165, the court said, "Where accounts are kept and returns made on an accrual basis, * * * deductions are to be taken in the year in which the items deducted are incurred, whether actually paid or not."

The liability for the taxes contained in the questioned item was incurred long before 1942. The accrual method in general accounting practice means that charges and income are allotted to the period in which they are incurred and earned. It is argued by respondent that the words "railway tax accruals," as used in the statute, have the meaning applied to them in the specialized sense of railroad accounting. We do not so hold. The clear legislative purpose would be defeated by any such determination.

In determining whether an item is a proper deduction as a "railway tax accrual" within the legislative intent as expressed in the Railway Tax Act, we believe the following tests should be applied: 1—Is the item of the type that prior to May 1st, 1942, would have been customarily and in accordance with recognized accounting practices of the time included in the railway tax accrual account? 2—It having been determined that the item is of the proper type, is the year against which the item is sought to be charged the proper year? The first test is important for the obvious reason that the legislature could not have intended that anything other than taxes as actually assessed and levied should be included in the tax

accrual account. At the date of the passage of the act this appears to have been the policy of the Interstate Commerce Commission. The second test is necessary to prevent a manipulating of accounts to the detriment of the state's revenue.

Using the above tests in the instant case we find that the item is for taxes, and as such belongs in the tax accrual account, if charged within the proper fiscal period. It is with the second test, that we are presently concerned. Considering the history of the legislation and the practice current at the time of its passage we are led to the conclusion, as heretofore expressed, that the legislature intended that only taxes assessed and levied for the year in which it is sought to determine the net operating income would be permitted as deductions in the determination of such income.

We again call attention to what was said above concerning Interstate Commerce Commission permission. Neither special permission from the Interstate Commerce Commission nor new rules nor new interpretation of old rules by that body can be given consideration in determining whether an amount may be treated as a railway tax accrual under our statutes for New Jersey franchise tax purposes. Such must be our finding, otherwise, it might be held that the act is unconstitutional.

Much reliance is placed by the respondent and the intervenors on the opinion of the United States Supreme Court in *Dixie Pine Products Co.* v. *Commissioner of Internal Revenue*, 320 *U. S.* 516, and on *Security Flour Mills Co.* v. *Commissioner of Internal Revenue*, 321 *Id.* 281, which followed it. Our Supreme Court used these cases to buttress its opinion. They do not appear to us to be in point. The federal income tax was involved and in both cases the attack was upon the validity of the tax itself, not the amount of the assessment. A holding in a federal income tax case based solely on the construction of the Federal Revenue Acts is not controlling in construing a state law enacted for an altogether different purpose.

Even if it could be said that these cases set forth the law with respect to the time of accrual of taxes for New Jersey

franchise tax purposes they would not avail the respondent because under no circumstances could it be said any of these taxes accrued in 1942 or subsequent thereto.

The judgment of the Supreme Court is reversed, and that of the State Board of Tax Appeals affirmed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, DONGES, HEHER, PERSKIE, COLIE, OLIPHANT, WELLS, DILL, FREUND, MCGEEHAN, JJ. 12.